**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| (1) WILLIAM SHANE BODE, an individual, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. CIV-24- 290-J |
| | ) | |
| v. | ) | |
| | ) | **Jury Trial Demanded** |
| (1) THE CITY OF FAIRVIEW; | ) | **Attorney's Lien Claimed** |
| (2) STEVE TANIO; | ) | |
| (3) PHILIP FLETCHER; | ) | |
| (4) HOBY HAMMER; | ) | |
| (5) PHILLIP K. EWBANK; | ) | |
| (6) CHRIS GDANSKI; | ) | |
| (7) ROBERT LAVERTY; | ) | |
| (8) JEFFREY SCOTT CAREY; | ) | |
| (9) RHONDA REGIER; | ) | |
| (10) STAN HARGROVE; and | ) | |
| (11) WES MONGOLD, | ) | |
| | ) | |
| Defendants. | ) | |

## COMPLAINT

**COMES NOW** Plaintiff William Shane Bode and, for his causes of action against

the Defendants identified in the caption above, alleges and states as follows:

The Parties

1.      Plaintiff William Shane Bode is and at all relevant times has been a citizen

of the State of Oklahoma and a resident of this judicial district.

2.      Defendants Steve Tanio, Philip Fletcher, Hoby Hammer, Phillip K. Ewbank,

Chris Gdanski, Robert Laverty, Jeffrey Scott Carey, Rhonda Regier, Stan Hargrove and

Wes Mongold are and at all relevant times have been citizens of the State of Oklahoma

and residents of this judicial district.

1

3.  Defendant The City of Fairview is a municipal corporation organized under the laws of the State of Oklahoma with its principal place of municipal business within this judicial district.

## Jurisdiction and Venue

4.  This Court has personal jurisdiction over each of the Defendants because they are all citizens of the State of Oklahoma.

5.  This Court has subject matter jurisdiction over the causes of action asserted in this Complaint pursuant to 28 U.S.C. § 1331 and 1367.

6.  Venue is proper in this judicial district because all or a substantial part of the cause of action arose herein.

## Factual Allegations

7.  Plaintiff Shane Bode was elected to the Fairview City Council on October 26, 2017.

8.  Bode is the sole member and manager of SLK Investments, LLC. SLK owns certain real property located in the City of Fairview, including the property commonly known as 801 W. Oklahoma.

9.  On May 20, 2021, Siblings Investment Group ("SIG") signed a lease agreement with SLK to lease its property at 801 W. Oklahoma.

10.  SIG was owned, in whole or in part, by an individual named Andy Yang.

11.  On May 21, 2021, SLK signed a lease agreement with South Canadian Land Development, LLC to lease a commercial building located at 1700 N. Main in Fairview. This building is often referred to as the Mabar/Crescent Building.

12.     SLK prepared a draft agreement to sub-lease the Mabar/Crescent Building to SIG. However, SLK and SIG never executed the agreement. SIG never occupied the premises of the Mabar/Crescent Building.

13.     In May 2021, Defendant City did not have a permanent City Manager. At this time, Sam Rauh was serving as the Interim City Manager.

14.     Defendant City's City Council imposed a $5,000.00 spending limit on Rauh as the Interim City Manager. In order to complete any transaction exceeding $5,000.00, Rauh was required to obtain the approval of the City Council.

15.     Upon information and belief, Andy Yang had a conversation with Sam Rauh in April or May 2021 regarding Yang's potential lease of the Mabar/Crescent Building. Yang expressed that, if he leased the building, he would need to upgrade the electrical service because of his intended use of the building as a medical marijuana grow.

16.     Yang never submitted a written application to upgrade the electrical service to the Mabar/Crescent Building. Moreover, Yang never had any right, title, or interest in the Mabar/Crescent Building, and he therefore could not have lawfully requested an upgrade to the electrical service at a building he did not own or lease.

17.     Nevertheless, Sam Rauh ordered pad-mounted transformers and other equipment to complete an electrical upgrade to the Mabar/Crescent Building on or around May 28, 2021.

18.     The total amount of the invoice for this project far exceeded Rauh's spending limit. Rauh did not obtain approval from the City Council to use public funds for this

project. It was Rauh's intention at all times to pass the entire cost of the invoice on to Yang, and to never use any public funds to purchase the project.

19.    On June 11, 2021, the City received the transformers and other equipment that Rauh ordered to complete an electrical service upgrade at the Mabar/Crescent Building. Two pad-mounted transformers (the "Transformers") were originally delivered to the City's yard; however, Rauh directed the truck driver to deliver the Transformers to 801 W. Oklahoma.

20.    The project situs **was not** 801 W. Oklahoma.

21.    When the truck driver arrived at 801 W. Oklahoma, Plaintiff Bode was present. Plaintiff Bode did not know that Yang had requested an electrical service upgrade at the Mabar/Crescent Building.

22.    Plaintiff Bode spoke to Rauh and questioned him about the delivery of the Transformers. Rauh told Bode that the Transformers were for the project at the Mabar/Crescent Building. At this time, Bode informed Rauh that Yang did not have a signed lease agreement at that property.

23.    Rauh then directed the delivery truck to take the Transformers to the Mabar/Crescent Building, despite Bode's objection to storing the Transformers for the City for a project that was not approved by the tenant or owner of the property.

24.    Ultimately, the Transformers were delivered to the Mabar/Crescent Building on that date and Bode signed for them at the time they were unloaded.

25.    Fairview Utilities Authority later issued Invoice #1735 to Yongfa LLC Corp. for $90,973.49. SIG wrote a check, signed by Andy Yang, to the City for the exact amount

of Invoice #1735. Defendant City issued Receipt #787310, signed by Michelle Brown, for this amount.

26.    Defendant City deposited this check on June 22, 2021, and it was accepted by the City's bank on June 23, 2021.

27.    On July 8, 2021, the Fairview Utilities Authority issued a check to Border States, which included the cost of the Transformers that had been delivered to the Mabar/Crescent Building.

28.    **No public money was used to purchase the Transformers that were delivered to the Mabar/Crescent Building on June 11, 2021.**

29.    In other words, SIG paid in full for the Transformers. SIG was at all relevant times a private entity.

30.    Neither SIG nor any other entity owned, controlled, or managed by Andy Yang **ever** sub-leased the Mabar/Crescent Building from SLK/Bode.

31.    Despite this, the Transformers remained on the property throughout 2021 and through part of 2022.

32.    In early 2022, the City Council voted to hire Defendant Chris Gdanski as the City Manager. Plaintiff Bode was the only member of the City Council to vote against the hiring of Gdanski.

33.    On March 1, 2022, the City of Fairview held a Regular City Council Meeting. At the time, the members of the City Council were Mayor Dana Baldwin; Vice Mayor Troy Hubbard; Shane Bode; John Medley; and Stan Hargrove. Each council member was present during the meeting.

34.     During the meeting, Bode presented a copy of a safety manual written by former City Manager Jerry Eubanks and another city employee. Bode explained that Councilmember Hargrove asked Eubanks to rewrite the manual to become an official manual for Hargrove's private company, Stan's Construction.

35.     Bode made a motion to investigate the allegation because, if the claims were proved, he believed that Hargrove would have violated multiple state laws.

36.     On or around March 24, 2022, Andy Yang and the employees that he hired to work at his two medical marijuana grow houses in Fairview began living at Bode/SLK's property at 801 W. Oklahoma. Yang did not obtain permission from Bode to live in this facility, and in fact this action violated the terms of SLK's lease with SIG.

37.     On or around April 1, 2022, Bode learned that Yang and his employees were living in the building at 801 W. Oklahoma. SLK evicted SIG from the property.

38.     During the eviction, Bode discovered that Yang had damaged his property and, given the property damage and breach of the lease, Bode and Yang discussed the possibility of settlement of Bode and SLK's claims against Yang.

39.     Yang agreed to and did convey the Transformers that he purchased for the potential electrical upgrade at 1700 N. Main to Bode and SLK to compensate Bode and SLK for the damages that Yang caused.

40.     Two days later on April 3, 2022, SLK ended its lease at 1700 N. Main. As of this date, the Transformers were still located at that property. Bode moved the Transformers to SLK's property at 801 W. Oklahoma. The next day, April 4, 2022, Bode informed City Manager Chris Gdanski that he (Bode) intended to sell the transformers.

Bode asked Gdanski to speak with someone in the legal department to determine if there was any issue if he did sell the Transformers.

41.    Bode spoke to Gdanski a second time about his desire to sell the Transformers on or around April 22, 2022. On May 10, 2022, Bode and Jayson Bartel met with Gdanski in his office at City Hall. In this meeting, Bode informed Gdanski that he had a buyer for the Transformers, and the buyer would be coming at the end of the week to pick them up. Bode told Gdanski that, if there were any issues, he needed to speak up now. Gdanski stated that the only question brought up by the City's legal team was as to why SIG did not pay sales tax. Bode explained the reason for this.

42.    On May 16, 2022, Bode sold the Transformers to Ninnescah Rural Electric in Pratt, Kansas.

43.    In June and July 2022, Councilmembers John Medly and Dana Baldwin resigned their positions. On July 22, 2022, the three (3) remaining councilmembers voted to terminate Chris Gdanski as City Manager effective immediately.

44.    On July 8 2022, Katie Martin Fletcher, who is the spouse of Defendant Phillip Fletcher, called Jerry Eubanks and left a voicemail wanting to speak with him.

45.    At the time, Jerry Eubanks was represented by counsel.

46.    Later on July 8, 2022, Eubanks and Katie Martin Fletcher spoke by telephone. Katie Martin Fletcher told Eubanks that Phillip Fletcher was "gunning for" Bode and that he "want[ed] to get rid of" Bode. Katie Martin Fletcher told Eubanks, "Anything you can do to hang [Bode], that's what [Phillip] wants."

47.    On July 9, 2022, Katie Martin Fletcher spoke to Eubanks once again. She told Eubanks that Defendant Phillip Fletcher did want to speak to Eubanks.

48.    On July 29, 2022, Defendant Gdanski contacted Defendant Steve Tanio. At the time, Defendant Tanio was employed as an Investigator with District #26 District Attorney's Office.

49.    Defendant Gdanski accused Bode of violating criminal law by selling the transformers, even though Defendant Gdanski had full knowledge that Bode's actions did not violate criminal law.

50.    On August 10, 2022, Eubanks texted Defendant Steve Tanio, letting Tanio know that a private citizen, Hoby Hammer, wanted to meet with Eubanks for the purpose of Eubanks divulging information with respect to the prosecution of Bode. Tanio, an Investigator for the DA's Office, knew that Eubanks was represented by counsel at this time.

51.    Later that evening, Eubanks met with Hoby Hammer at his motel room in Fairview. Hammer asked Eubanks to meet with some people, including Defendant Phillip Fletcher, the next morning. Hammer also gave Eubanks $500.00 in cash.

52.    On August 11, 2022, Eubanks appeared at the District Court of Major County related to criminal charges filed against him. Eubanks spoke with Defendant Phillip Fletcher prior to the court appearance about meeting that afternoon at Hoby Hammer's office.

53.     Eubanks' attorney appeared on his behalf at the hearing set for August 11. Defendant Phillip Fletcher was present and knew, both before and after the hearing, that Eubanks was represented.

54.     Eubanks did in fact meet at Hobby Hammer's office later on August 11, 2022, without having informed his counsel of the meeting. Hobby Hammer, Jeff Carey, Kris Ewbank, and George Eischen were initially at the meeting. During the meeting, Ewbank called Phillip Fletcher from his cell phone to demand that he appear.

55.     Shortly thereafter, Defendant Phillip Fletcher did in fact join the meeting at Hoby Hammer's office. He remained at the meeting until it concluded.

56.     After Defendant Phillip Fletcher joined the meeting, the group of individuals present discussed what information Eubanks could provide to lead to the prosecution of Bode in exchange for favorable outcomes in Eubanks' criminal cases. Before the meeting concluded, Defendant Tanio was added to the call via speaker phone and informed of everyone who was present. Tanio accused Eubanks of being dishonest and threatened to submit additional felony charges against him.

57.     As a part of his investigation, Tanio prepared a probable cause affidavit that he submitted to the Court to obtain criminal charges and an arrest warrant against Bode.

58.     In his probable cause affidavit, Defendant Tanio included a number of false and/or misleading statements as follows:

- That Bode leased a building to Andy Yang to use as a marijuana grow facility, and the City entered into a contract with Yang's company, Yongfa Management, FPG, LLC, for an electrical upgrade at the building. This was a blatant falsehood.

9

- That, as a part of the City's contract with Yongfa, it was stated that the transformers would remain the property of the City. This was a blatant falsehood; the City's contract with Yongfa, and the three transformers related to that contract, had nothing to do with Bode or SLK;

- That, on August 5, 2022, "it was discovered the City of Fairview transformers had been sold by Bode to Ninnescah Rural Electric Cooperative." This was a blatant falsehood. Bode did not sell the City's three transformers referenced in the Yongfa contract; he never even had any possession, custody, or control of those transformers.

59. In his probable cause affidavit, Defendant Tanio omitted material exculpatory information as follows:

- That the actual transformers sold by Bode were related to the property at 1700 N. Main, and that neither Yang nor his entity, SIG, ever had the authority to request an electrical upgrade at this property;

- That the actual Transformers were paid for solely by private money, *i.e.* by Yang, and that the City never had possession of the Transformers nor ever completed any electrical upgrade at 1700 N. Main related to Yang's unauthorized request;

- That Gdanski knew the City did not own the Transformers because the City's formal position was that the property owner owned any pad-mounted transformers inside of the property line;

- That Gdanski knew the City's attorneys did not believe that the City owned the Transformers.

60. On August 18, 2022, the State of Oklahoma, by and through Assistant District Attorney Phillip Fletcher, filed criminal charges against Bode in Major County Case No. CF-2022-40 and CM-2022-45.

61. Plaintiff Bode was arrested the same date that the charges were filed, *i.e.* August 18, 2022.

62. On December 2, 2022, Bode received an invoice from the City of Fairview. There was no basis for the invoice. Bode appeared at City Hall to object to the invoice.

63. Laverty, Michelle Brown, and Rhonda Regier would later falsely accuse Bode of making threats during this discussion at City Hall.

64. On December 5, 2022, Defendant Laverty signed a Letter of Trespass Notice to Plaintiff Bode and his wife, Lori Bode. The Letter stated in full as follows:

> This letter is to inform you that as of today December 5, 2022, you are no longer allowed in or around the premises of any City of Fairview owned properties in Fairview, OK for any reason whatsoever.
>
> If you are seen in or around any City of Fairview owned properties in Fairview, OK, you will be considered a 'Trespasser' and the City of Fairview Police Department will be called to arrest you. This notice is to comply with O.S. 21 § 1835 and 21 § 1353. A copy of this letter has also been given to the City of Fairview Police Department and Major County Sheriff's Office to retain for their records.

65. On the same date (December 5), Laverty ordered Joe Johnson, Chief of Police of the City of Fairview, into his office and instructed Johnson to deliver the Letter of Trespass to Bode. Johnson objected to the delivery of the Letter and stated that it was unlawful to prohibit Bode and his wife from being in or around any City property for any reason whatsoever. Laverty stated that Defendant Fletcher and Defendant Mongold approved the delivery of the Letter of Trespass, even though Bode had not received any hearing whatsoever.

66. In February 2023, Bode's counsel in the criminal law matters learned about Defendant Phillip Fletcher's *ex parte* communications with his client, Jerry Eubanks,

11

relating to Fletcher's quest to prosecute Bode. Bode's counsel thereafter filed a Motion to Disqualify the District Attorney's Office and/or Fletcher.

67.     Prior to the time that the Motion was heard, Christopher Boring, District Attorney, dismissed the charges against Bode.

68.     On September 21, 2022, the State of Oklahoma filed a Motion to Compel Defense Counsel To Be Disqualified By The Court and Ordered To Withdraw in the criminal felony case pending against Plaintiff Bode.

**FIRST CAUSE OF ACTION – MALICIOUS PROSECUTION**
**<u>VIOLATION OF THE FOURTH AMENDMENT OF THE U.S. CONSTITUTION</u>**

69.     Plaintiff Bode asserts this cause of action against Defendant Steve Tanio in his individual capacity.

70.     Plaintiff Bode incorporates by reference the above and foregoing allegations as though set forth in full herein.

71.     At all times relevant hereto, Defendant Tanio acted under color of law.

72.     The Fourth Amendment to the United States Constitution provides that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."

73.     In August of 2022, the law was clearly established that a law enforcement officer would violate a citizen's Fourth Amendment rights by falsifying and fabricating

12

evidence to facilitate a wrongful, malicious prosecution. <u>Pierce v. Gilchrist</u>, 359 F.3d 1279 (10th Cir. 2004).

74.     In August 2022, Defendant Tanio signed a probable cause affidavit asserting that his investigation had uncovered probable cause that Plaintiff Bode committed embezzlement in violation of 21 O.S. § 1451.

75.     Defendant Tanio thereafter presented his probable cause affidavit to the District Court of Major County, which found that the affidavit established probable cause that Bode had committed the criminal felonies as alleged.

76.     As a result, the court issued an arrest warrant for Bode and Bode was subsequently arrested pursuant to said warrant.

77.     Defendant Tanio therefore initiated the criminal charges against Plaintiff Bode.

78.     Defendant Tanio's probable cause affidavit was almost entirely false, as none of the allegations he made against Plaintiff Bode were true. Specifically, Defendant Tanio swore under oath:

(a)     That Bode leased property to an individual/company for use as a marijuana grow facility and that the individual/company who leased the property entered into a written contract with the City of Fairview/Fairview Utilities Authority "for the installation of certain electrical improvements."

(b)     That, pursuant to the written contract described above, the City purchased three electrical transformers as well as supplies and pads to complete the electrical improvements;

(c)     That Bode sold the transformers to an entity from Kansas called Ninnescah Rural Electric Cooperative.

13

79. These allegations were wholly false. Bode did not lease the property identified in the affidavit nor did he have any connection to said property. Furthermore, Bode did not sell the transformers identified in the affidavit, nor did he ever have any possession, custody, or control over said transformers.

80. Defendant Tanio knew that the allegations were wholly false, as he was involved in a conspiracy with the other defendants in this action (as described herein) to harm Bode and his reputation.

81. On April 18, 2023, the State of Oklahoma dismissed the charges against Plaintiff Bode. Pursuant to *Thompson v. Clark*, --- U.S. --- (2022), this constitutes a favorable termination.

82. There was no probable cause to support the original arrest, confinement, or prosecution, when considering the true evidence and not the lies of Defendant Tanio.

83. Defendant Tanio took the actions described herein intentionally and with malice towards Plaintiff Bode, or in reckless disregard for Plaintiff Bode's rights under the Fourth Amendment.

84. As a direct and proximate result of Defendant Tanio's actions, Plaintiff Bode has suffered economic and non-economic damages, including lost wages and benefits, mental anguish and emotional distress, sleeplessness, anxiety, humiliation, embarrassment, damage to his professional reputation, inconvenience, loss of enjoyment of life, and other nonpecuniary losses, all to his detriment and damage in a sum in excess of Seventy-Five Thousand Dollars and No/100 ($75,000.00).

14

**WHEREFORE** Plaintiff William Shane Bode prays for judgment against Defendant Steve Tanio as follows:

(1) For his actual damages in a sum in excess of Seventy-Five Thousand Dollars and No/100 ($75,000.00) and in accordance with the proof at the time of trial;

(2) For punitive damages;

(3) For a reasonable attorney's fee;

(4) For his court costs;

(5) For pre- and post-judgment interest as provided by law; and

(6) For any other such and further relief as the Court or jury deems just and equitable that is allowed by law.

## SECOND CAUSE OF ACTION – CONSPIRACY TO VIOLATE CIVIL RIGHTS VIOLATION OF 42 U.S.C. § 1983

85.     Plaintiff Bode asserts this cause of action against Defendants Steve Tanio, Chris Gdanski, Philip Fletcher, Hoby Hammer, Phillip Kris Ewbank, Jeffrey Scott Carey, Rhonda Regier, Stan Hargrove, and Wes Mongold.

86.     Plaintiff Bode incorporates by reference the above and foregoing allegations as though set forth in full herein.

87.     Defendants Steve Tanio, Chris Gdanski, Philip Fletcher, Hoby Hammer, Phillip Kris Ewbank, Jeffrey Scott Carey, Rhonda Regier, Stan Hargrove, and Wes Mongold commenced or caused the commencement of, and had detailed knowledge of, the investigation and criminal prosecution of Plaintiff Bode.

15

88.    Defendants Steve Tanio, Chris Gdanski, Philip Fletcher, Hoby Hammer, Phillip Kris Ewbank, Jeffrey Scott Carey, Rhonda Regier, Stan Hargrove, and Wes Mongold knew that the allegations against Plaintiff Bode were false and that the affidavit signed by Tanio omitted material exculpatory information.

89.    Defendants Steve Tanio, Chris Gdanski, Philip Fletcher, Hoby Hammer, Phillip Kris Ewbank, Jeffrey Scott Carey, Rhonda Regier, Stan Hargrove, and Wes Mongold had an explicit or implicit agreement to commit an unlawful act, *i.e.* to cause the prosecution against Plaintiff Bode, as well as abuse the court process, in an effort to harm Plaintiff Bode politically and personally and to cause his resignation from public office.

90.    These defendants each took overt acts to accomplish their unlawful agreement as described herein.

91.    Defendant Tanio prepared and submitted a false affidavit of probable cause that omitted material exculpatory information.

92.    At all relevant times to this cause, Defendant Tanio acted under color of law.

93.    Defendant Fletcher agreed to investigate and fabricate evidence against Plaintiff Bode.

94.    At all relevant times to this cause, Defendant Fletcher acted under color of law.

95.    Defendants Hoby Hammer, Phillip Kris Ewbank, Jeffrey Scott Carey, Rhonda Regier, Stan Hargrove, and Wes Mongold actively used their positions in the Fairview community to falsely accuse Bode of criminal embezzlement and to induce Fletcher and Tanio to go along with the false story that they concocted, as described herein.

96.    Although Defendants Hammer, Gdanski, Ewbank, and Carey were private citizens at the time that Tanio signed the false probable cause affidavit, they conspired with state actors, namely Tanio, Fletcher, Regier, and Mongold, to cause Plaintiff Bode's prosecution, as alleged herein.

97.    The actions of these defendants were necessary to complete the unlawful act in this instance, as any defendant could have exposed the scheme by providing honest, truthful information.

98.    Defendants Steve Tanio, Chris Gdanski, Philip Fletcher, Hoby Hammer, Phillip Kris Ewbank, Jeffrey Scott Carey, Rhonda Regier, Stan Hargrove, and Wes Mongold had a single plan of action, *i.e.* to cause the malicious prosecution of Plaintiff Bode and/or to abuse the court process against Plaintiff Bode, as reflected by their actions described herein.

99.    The Defendants named in this cause of action are subject to joint and several liability for all of the damages caused by the malicious prosecution and/or abuse of process.

100.    Defendants took the actions described herein intentionally and with malice towards Plaintiff, or in reckless disregard for his rights under the Fourth and Fourteenth Amendments.

101.    As a direct and proximate result of the actions of Defendants Steve Tanio, Chris Gdanski, Philip Fletcher, Hoby Hammer, Phillip Kris Ewbank, Jeffrey Scott Carey, Rhonda Regier, Stan Hargrove, and Wes Mongold, Plaintiff Bode has suffered economic and non-economic damages, including lost wages and benefits, mental anguish and emotional distress, sleeplessness, anxiety, humiliation, embarrassment, damage to his

17

professional reputation, inconvenience, loss of enjoyment of life, and other nonpecuniary losses, all to his detriment and damage in a sum in excess of Seventy-Five Thousand Dollars and No/100 ($75,000.00).

**WHEREFORE** Plaintiff William Shane Bode prays for judgment against Defendants Steve Tanio, Chris Gdanski, Philip Fletcher, Hoby Hammer, Phillip Kris Ewbank, Jeffrey Scott Carey, Rhonda Regier, Stan Hargrove, and Wes Mongold as follows:

(1) For his actual damages in a sum in excess of Seventy-Five Thousand Dollars and No/100 ($75,000.00) and in accordance with the proof at the time of trial;

(2) For punitive damages;

(3) For a reasonable attorney's fee;

(4) For his court costs;

(5) For pre- and post-judgment interest as provided by law; and

(6) For any other such and further relief as the Court or jury deems just and equitable that is allowed by law.

### THIRD CAUSE OF ACTION – PROCEDURAL DUE PROCESS VIOLATION OF THE FOURTEENTH AMENDMENT OF THE U.S. CONSTITUTION

102.    Plaintiff Bode asserts this cause of action against Defendants Robert Laverty, Rhonda Regier, Wes Mongold, and The City of Fairview.

103.    Plaintiff Bode incorporates by reference the above and foregoing allegations as though set forth in full herein.

104.    Plaintiff Bode had a protected property or liberty interest in and to access to public property in the City of Fairview.

18

105.    Plaintiff Bode was issued a "no trespass" letter prohibiting from entry onto *any* public property *for any reason* without any notice or opportunity for hearing.

106.    Defendant Robert Laverty signed the "no trespass" letter and had it issued to Plaintiff Bode.

107.    Defendant Rhonda Regier made false accusations in support of the No Trespass letter by accusing Bode of being violent in City Hall.

108.    Defendant Wes Mongold, as Sheriff of Major County, ratified the no trespass letter and provided improper legal advice to Laverty.

109.    Defendant The City of Fairview, through its City Council, ratified the no trespass letter because, despite notice of said letter, it never rescinded the letter nor did it ever provide Plaintiff Bode with a hearing.

110.    Defendant Laverty's actions violated clearly established law.

111.    Defendant Laverty's actions were taken under color of law, as he was the City Manager for the City of Fairview.

112.    Defendant Laverty took the actions described herein intentionally and with malice towards Plaintiff Bode, or in reckless disregard for his rights under the Fourteenth Amendment of the United States Constitution.

113.    As a direct and proximate result of Defendants' actions, Plaintiff has suffered economic and non-economic damages, including lost wages and benefits, mental anguish and emotional distress, sleeplessness, anxiety, humiliation, embarrassment, damage to his professional reputation, inconvenience, loss of enjoyment of life, and other nonpecuniary

19

losses, all to his detriment and damage in a sum in excess of Seventy-Five Thousand Dollars and No/100 ($75,000.00).

**WHEREFORE** Plaintiff William Shane Bode prays for judgment against Defendants Roberty Laverty and The City of Fairview as follows:

(1) For his actual damages in a sum in excess of Seventy-Five Thousand Dollars and No/100 ($75,000.00) and in accordance with the proof at the time of trial;

(2) For punitive damages against Defendant Laverty;

(3) For a reasonable attorney's fee;

(4) For his court costs;

(5) For pre- and post-judgment interest as provided by law; and

(6) For any other such and further relief as the Court or jury deems just and equitable that is allowed by law.

### FOURTH CAUSE OF ACTION – RETALIATORY PROSECUTION IN VIOLATION OF THE FIRST AMENDMENT OF THE U.S. CONSTITUTION

114. Plaintiff Bode asserts this cause of action against Defendant Steve Tanio.

115. Plaintiff Bode incorporates by reference the above and foregoing allegations as though set forth in full herein.

116. The First Amendment to the United States Constitution provides, in part, that "Congress shall make now law . . . abridging the freedom of speech." U.S. CONST. AMEND. I. This prohibition was made applicable to the States and their political subdivisions by virtue of the Fourteenth Amendment. U.S. CONST. AMEND. XIV; see also Cantwell v. Connecticut, 310 U.S. 296 (1940).

20

117.    "[T]he law is settled that as a general matter the First Amendment prohibits government officials from subjecting an individual to retaliatory . . . criminal prosecutions for speaking out." Hartman v. Moore, 126 S.Ct. 1695 (2006).

118.    Plaintiff Bode engaged in speech protected by the First Amendment as described herein.

119.    Defendant Tanio's actions as described herein caused Plaintiff Bode to suffer an injury that would chill a person of ordinary firmness from continuing to engage in the protected activity, in that, he presented a false affidavit designed to cause Plaintiff Bode's arrest, prosecution and incarceration.

120.    When considering the truth and not the lies told by Defendant Tanio, there was no probable cause to prosecute Plaintiff Bode for embezzlement.

121.    Defendant Tanio was substantially motivated to cause Plaintiff's arrest and prosecution as a response to Plaintiff Bode's protected conduct.

122.    Defendant Tanio's actions were taken under color of law.

123.    As a direct and proximate result of Defendant Tanio's actions, Plaintiff Bode has suffered economic and non-economic damages, including lost wages and benefits, mental anguish and emotional distress, sleeplessness, anxiety, humiliation, embarrassment, damage to his professional reputation, inconvenience, loss of enjoyment of life, and other nonpecuniary losses, all to his detriment and damage in a sum in excess of Seventy-Five Thousand Dollars and No/100 ($75,000.00).

**WHEREFORE** Plaintiff William Shane Bode prays for judgment against Defendant Steve Tanio as follows:

21

(1) For his actual damages in a sum in excess of Seventy-Five Thousand Dollars and No/100 ($75,000.00) and in accordance with the proof at the time of trial;

(2) For punitive damages;

(3) For a reasonable attorney's fee;

(4) For his court costs;

(5) For pre- and post-judgment interest as provided by law; and

(6) For any other such and further relief as the Court or jury deems just and equitable that is allowed by law.

## FIFTH CAUSE OF ACTION – CONSPIRACY TO VIOLATE CIVIL RIGHTS VIOLATION OF 42 U.S.C. § 1983 (FIRST AMENDMENT)

124.    Plaintiff Bode asserts this cause of action against Defendants Steve Tanio, Chris Gdanski, Philip Fletcher, Hoby Hammer, Phillip Kris Ewbank, and Jeffrey Scott Carey, Rhonda Regier, Stan Hargrove, and Wes Mongold.

125.    Plaintiff Bode incorporates by reference the above and foregoing allegations as though set forth in full herein.

126.    Defendants Tanio, Gdanski, Fletcher, Hammer, Ewbank, Carey, Regier, Hargrove, and Mongold commenced or caused the commencement of, and had detailed knowledge of, the investigation and criminal prosecution of Plaintiff Bode.

127.    Defendants Tanio, Gdanski, Fletcher, Hammer, Ewbank, Carey, Regier, Hargrove, and Mongold knew that the allegations against Plaintiff Bode were false and that the affidavit signed by Tanio omitted material exculpatory information.

128. Defendants Tanio, Gdanski, Fletcher, Hammer, Ewbank, Carey, Regier, Hargrove, and Mongold had an explicit or implicit agreement to commit an unlawful act, *i.e.* to cause the prosecution against Plaintiff Bode in retaliation for Bode's protected speech.

129. These defendants each took overt acts to accomplish their unlawful agreement as described herein.

130. Defendant Tanio prepared and submitted a false affidavit of probable cause that omitted material exculpatory information.

131. At all relevant times to this cause, Defendant Tanio acted under color of law.

132. Defendant Fletcher agreed to investigate and fabricate evidence against Plaintiff Bode.

133. At all relevant times to this cause, Defendant Fletcher acted under color of law.

134. Defendants Tanio, Gdanski, Fletcher, Hammer, Ewbank, Carey, Regier, Hargrove, and Mongold actively used their positions in the Fairview community to falsely accuse Bode of criminal embezzlement and to induce Fletcher and Tanio to go along with the false story that they concocted, as described herein.

135. Although Defendants Hammer, Gdanski, Ewbank, and Carey were private citizens at the time that Tanio signed the false probable cause affidavit, they conspired with state actors, namely Tanio, Fletcher, Regier, Hargrove, and Mongold, to cause Plaintiff Bode's prosecution, as alleged herein.

136. The actions of these defendants were necessary to complete the unlawful act in this instance, as any defendant could have exposed the scheme by providing honest, truthful information.

137. Defendants Tanio, Gdanski, Fletcher, Hammer, Ewbank, Carey, Regier, Hargrove, and Mongold had a single plan of action, *i.e.* to cause the malicious prosecution of Plaintiff Bode and/or to abuse the court process against Plaintiff Bode, as reflected by their actions described herein.

138. The Defendants named in this cause of action are subject to joint and several liability for all of the damages caused by the malicious prosecution and/or abuse of process.

139. Defendants took the actions described herein intentionally and with malice towards Plaintiff, or in reckless disregard for his rights under the Fourth and Fourteenth Amendments.

140. As a direct and proximate result of the actions of Defendants Tanio, Gdanski, Fletcher, Hammer, Ewbank, Carey, Regier, Hargrove, and Mongold, Plaintiff Bode has suffered economic and non-economic damages, including lost wages and benefits, mental anguish and emotional distress, sleeplessness, anxiety, humiliation, embarrassment, damage to his professional reputation, inconvenience, loss of enjoyment of life, and other nonpecuniary losses, all to his detriment and damage in a sum in excess of Seventy-Five Thousand Dollars and No/100 ($75,000.00).

**WHEREFORE** Plaintiff William Shane Bode prays for judgment against Defendants Tanio, Gdanski, Fletcher, Hammer, Ewbank, Carey, Regier, Hargrove, and Mongold as follows:

(7) For his actual damages in a sum in excess of Seventy-Five Thousand Dollars and No/100 ($75,000.00) and in accordance with the proof at the time of trial;

(8) For punitive damages;

(9) For a reasonable attorney's fee;

(10)    For his court costs;

(11)    For pre- and post-judgment interest as provided by law; and

(12)    For any other such and further relief as the Court or jury deems just and equitable that is allowed by law.

Dated this 21st day of March, 2024.

/s/ Barrett T. Bowers
Barrett T. Bowers, OBA#30493
THE BOWERS LAW FIRM
1611 N. Broadway Ave.
Second Floor
Oklahoma City, Oklahoma 73103
(405) 768-2907 – Telephone
(405) 727-7188 – Cell Phone
barrett@bowerslawok.com
**Attorney for Plaintiff**